# Chaney *v.* The State.

## *Murder.*

(Decided June 29, 1912. 59 South. 604.)

1. *Charge of Court; Presumption of Innocence.*—A defendant is entitled to have the court instruct the jury that a defendant enters the trial with a presumption of innocence, and that this is a fact in the case which must be considered with all the evidence, and should not be disregarded.

2. *Homicides Instruction; Self-Defense.*—Where the homicide was committed in defendant's place of business, and defendant's evidence tended to show that deceased had a billiard ball in his hand as if to throw it at him when he fired the shot, and there was no evidence produced by either side tending to show that defendant did anything to provoke an attack by decedent before the shooting, a charge asserting that if the minds of the jury were left in such a state of uncertainty or doubt that they could not say beyond a reasonable doubt whether defendant acted upon a well-founded and reasonable belief that it was necessary to take decedent's life to save himself from death or great bodily harm, or whether he shot before such impending necessity arose, they should acquit, should have been given, as it was not necessary in this particular case for the charge to have hypothesized freedom from fault and duty to retreat.

3. *Same.*—Under such state of the evidence a charge asserting that if the conduct of deceased was such as to reasonably lead defendant to believe that deceased was about to inflict some great bodily harm on his person, and if defendant acting on such belief, shot and killed deceased, the jury should acquit, should have been given, although it failed to hypothesize freedom from fault, and duty to retreat.

4. *Same.*—Under such a state of the evidence, and where there was undisputed evidence that deceased had made many threats against defendant, a charge asserting that it was not necessary that defendant should have actually been in danger of death or great bodily harm, in order to justify the killing, but that he had a right to act upon appearances of things at the time, in connection with the light of all the evidence, and had the right to interpret deceased's attack in the light of the many threats by deceased shown by the evidence, and that if the circumstances were such as to justify a reasonable man in the belief that he was in danger of death or great bodily harm, and the defendant did so believe, he had a right to shoot the deceased, although as a matter of fact, he was not in actual danger, should have been given, as it was not necessary under the evidence to hypothesize freedom from fault or duty to retreat, and the use of the expression "many threats" (presumably intended for "any" threats) not justifying its refusal in view of the evidence that defendant had made "many" threats.

[Chaney v. The State.]

5. *Same.*—A charge asserting that if deceased picked up a billiard ball and held it in such a position as to indicate to defendant's mind, as a reasonable man, and interpreted in the light of previous threats, that he was about to throw it, the jury should acquit, although it should now appear that deceased did not intend to throw the ball, was properly refused, because not requiring a finding that defendant believed he was in danger of losing his life or sustaining serious bodily harm, but merely a finding that he believed deceased was about to throw the hall.

(McClellan and Somerville, JJ., dissenting.)

APPEAL from Gadsden City Court.

Heard before Hon. JAMES A. BILBRO.

Claude Chaney was convicted of murder in the second degree and sentenced to the penitentiary for 35 years, and he appeals. Reversed and remanded.

The following charges were refused the defendant:

(14) "I charge you that if, after looking at all the evidence in this case, your minds are left in such a state of doubt or uncertainty that you cannot say, beyond a reasonable doubt, whether the defendant acted upon a well-founded and reasonable belief that it was necessary to take the life of the deceased to save himself from great bodily harm or death, or that he shot before such impending necessity arose, then this is such a doubt as will entitle this defendant to an acquittal, and you should so find."

(16) "I charge you that if, after looking at all the evidence in this case, your minds are left in such a state of uncertainty," and concludes exactly like 14.

(2) "If the jury find from the evidence that the conduct of the deceased, Sam Snider, was such as to reasonably lead the defendant to believe that the deceased was about to inflict some great bodily harm on his person, and that the defendant, acting on such reasonable belief of great bodily harm, fired the shots at the deceased and killed him, then the jury should acquit."

(3) "The defendant enters into this trial with a pre-

sumption of innocence, and this is a fact in the case, which must be considered with all the evidence, and should not be disregarded."

(11) "The court charges the jury that Claude Chaney had a right to go to his place of business at the time the evidence showed that he did go there; that if, after entering his place of business, Sam Snider either picked up or caught a cueball, and held it in such position as to indicate to the mind of the defendant, as a reasonable man, and interpreted in the light of previous threats made by Snider against the defendant, that he was about to throw said ball at the defendant, then the jury must find him not guilty, even though it should now appear that Snider did not intend to throw said ball."

(18) "The court charges the jury that it is not necessary, under the evidence in the case, that the defendant should have been actually in danger of death or great bodily harm at the time he killed the deceased, in order for him to have been justified in shooting the deceased. He had the right to act upon the appearance of things at the time, taken in connection with the light of all the evidence; and he had the right to interpret the conduct of the deceased in the light of many threats that the evidence showed deceased had made against the defendant. If the circumstances attending the killing were such as to justify a reasonable man in the belief that he was in danger of great bodily harm or death, and he honestly believed such to be the case, then he had the right to shoot the deceased in his own defense, although, as a matter of fact, he was not in actual danger; and if the jury believe that the defendant acted under such conditions and circumstances, as above set out, the jury should find the defendant not guilty."

[Chaney v. The State.]

CULLI & MARTIN, for appellant. Where the evidence tends to show self-defense threats made against defendant by deceased are competent evidence.—*Roberts v. State,* 68 Ala. 156; *Turner's Case,* 160 Ala. 43; *Oliver's Case,* 2 Ala. App. 77. It is not necessary under these authorities to show that the threats were communicated. The court erred in declining to allow proof offered by witness Williams.—*Gafford v. State,* 122 Ala. 62; *Rutledge v. State,* 88 Ala. 85. Acts may imply a threat or menace as well as words.—*Linnehan v. State,* 113 Ala. 83. That deceased was in the habit of carrying a pistol was competent.—*Naugher v. State,* 116 Ala. 466; *Calley v. State,* 133 Ala. 129; *Wiley v. State,* 99 Ala. 146. Bad character must refer to a period prior to the commission of the alleged offense under investigation.—*McGuire v. State,* 2 Ala. App. 133; *Griffin v. State,* 90 Ala. 583. Charges 14 and 16 should have been given.—*Chaney v. State,* 55 South. 803; *Harris v. State,* 96 Ala. 24. Charge 3 was improperly refused.— *Bailey v. State,* 168 Ala. 4; *Neilson v. State,* 146 Ala. 683. Charge 2 should have been given.—*Cheney v. State, supra; Bluett v. State,* 151 Ala. 50. On the same authorities, charges 11 and 13 should have been given. The court erred in its oral charge to the jury.—*Turner's Case,* 160 Ala. 43; *Roberts' Case,* 68 Ala. 156.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, and W. J. BOYKIN, for appellee. Anger may be shown by descriptive testimony. —*Miller v. State,* 107 Ala. 40; *Reeves v. State,* 96 Ala. 33; *Weaver v. State,* 2 Ala. App. 100. The admission of showing for witnesses is in the irrevisable discretion of the trial court.—*Waters v. State,* 117 Ala. 108. Counsel discuss other assignments of error relative to evidence, but without further citation of authority.

Charges 7 and 8 were properly refused.—*McGhee v. State,* 59 South. 573. Charge 2 was properly refused. —*Chaney v. State,* 55 South. 801. Charges 5, 6 and 11 were properly refused on the same authority. Charge 13 was properly refused.—*Prater v. State,* 107 Ala. 28; *Hamilton v. State,* 147 Ala. 110. On these authorities and for other consideration, the other requested charges were properly refused.

ANDERSON, J.—This is the second appeal in this case, and the evidence as to what actually happened at the time of the killing is practically the same as upon the former trial.

The state's evidence shows that the deceased was in the defendant's poolroom playing pool or billiards, and had a cue in his hand, also a ball, which he had picked up after it bounced off the table; that the defendant, without saying a word, shot him; and that the deceased at the time was making no effort whatsoever to strike or injure the defendant. If this theory was true, the defendant was guilty of murder.

The defendant's evidence, like the state's, shows that there was no fuss, no word was spoken, and that the defendant did nothing, prior to the shooting, that could possibly provoke the deceased, except to enter his own place of business. The defendant's evidence, however, unlike that of the state on this point, showed that, while the defendant was standing in his poolroom, the deceased drew a billiard ball on him, and held it in a throwing position when he shot him. If, therefore, the jury entertained a reasonable doubt as to whether or not the defendant acted upon the well-grounded and reasonable belief that it was necessary to shoot to save himself from great bodily harm, or from death, or that he shot before such an impending necessity arose, then

this was such a doubt as would authorize an acquittal.
The defendant was in his place of business, and did
not have to retreat. Nor did the charge have to hypoth-
esize freedom from fault in bringing on the difficulty, as
the undisputed evidence showed that the defendant did
nothing to provoke the deceased before shooting. The
only issue or conflict in the evidence was whether or
not the deceased was making an effort to strike the
defendant with the ball before the defendant shot, and
which said fact was hypothesized in charges 14 and 16,
refused the defendant. These charges are practically
the same as charge 7, held good upon former appeal in
this case, and they should have been given.—*Chaney
v. State,* 172 Ala. 368, 55 South. 801; *Harris v. State,*
96 Ala. 24, 11 South. 255. A similar charge was held
to have been properly refused in the case of *Gaston v.
State,* 161 Ala. 37, 49 South. 876, because it pretermit-
ted the defendant's freedom from fault in bringing on
the difficulty; but it there appeared that the defendant
addressed some remarks to the deceased when he came
out into the yard and before the shooting, and which a
majority of the court held was sufficient to make free-
dom from fault a question for the jury. In the case
at bar, as in the *Harris Case, supra,* there was no evi-
dence of a difficulty, or that defendant did anything
to provoke one, other than firing the shots. He had the
right to go into his place of business without being at
fault in this respect, and he was under no legal duty
to retreat therefrom, and the charges did not have to
hypothesize the duty to retreat or freedom from fault;
and the defendant was entitled to an acquittal under
the postulates of charges 14 and 16, if believed by the
jury, or if they entertained a reasonable doubt as to
the existence of the facts therein hypothesized. For

similar reasons, charge 2, requested by the defendant, should have been given.

Charge 3, requested by the defendant, should have been given. It has been repeatedly approved by this court.—*Bailey v. State*, 168 Ala. 4, 53 South. 296, 390; *Neilson v. State*, 40 South. 221; *Bryant v. State*, 116 Ala. 445, 23 South. 40.

Charge 18, refused the defendant, should have been given. This charge, with the elements of freedom from fault and retreat embraced, was approved in the case of *Bluett v. State*, 151 Ala. 50, 44 South. 84. As heretofore stated, it did not have to hypothesize freedom from fault or retreat. It may be that the charge says "many threats," when it was intended as "any threats"; but this did not justify its refusal, or render it abstract or an invasion of the province of the jury, as there was evidence, undisputed, that the deceased made many threats against the defendant.

Charge 11, refused the defendant, pretermits an honest, reasonable, or bona fide belief by the defendant that he was in danger. The defendant may have thought that Snider was going to throw the ball, yet he may not have had the honest, reasonable, or bona fide belief that he was in danger of losing his life, or of sustaining serious bodily harm.

The other charges refused the defendant were either bad, abstract, or else duplicated by given charges. Nor was there reversible error to so much of the oral charge as was excepted to by the defendant.

There are many objections to the evidence; but we do not find that the trial court committed reversible error in any of the rulings upon the same. Many of the objections related to an attempt to enter into the details of a former difficulty between the parties, and to the age and condition of defendant's family and the

[Chaney v. The State.]

conduct of deceased towards the defendant's wife and child, and which was foreign to the issue involved. These and the other exceptions to the rulings upon the evidence form no basis for reversible error, and it would be useless to incumber the books with a rehash of elementary rules of evidence.

The judgment of the city court is reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON, MAYFIELD, and SAYRE, JJ., concur. MCCLELLAN and SOMERVILLE, JJ., dissent.

MCCLELLAN, J. — (dissenting.) — The defendant (appellant) has been twice adjudged guilty of the killing of Snider, without legal cause or excuse. That he shot Snider to death is admitted. The sole reliance of defendant for his exoneration was and is self-defense. The first judgment of conviction was reversed by this court, sitting in division, because of the refusal to defendant of special charges 4 and 7.—172 Ala. 368, 55. South. 801. On the retrial to which the cause was remanded, the court gave charge 4, but refused charge 7. The judgment of conviction is now again reversed because of the refusal of charge 7 (numbered 16 on this last trial), as well as for the refusal to defendant of special charges 2, 3, 14, and 18, notwithstanding the trial court gave, at defendant's request, 41 special charges covering the substantive law of the case, as shown by this transcript. The case was tried with evident caution and care, that the defendant might *certainly* have, what was his due, a full, fair, and impartial trial.

The finding of error in the refusal of charges 14 and 16 is predicated upon the assumption, not justified by

the record on this appeal, that "the undisputed evidence showed that the defendant did nothing to provoke the deceased before shooting." This is pertinent elementary law: "The necessity that will excuse the taking of human life must not have been produced by the wrongful act of the slayer.   *   *   *   He must not be unmindful of his acts or conduct which are likely to produce a deadly combat; and if by his acts or conduct he shows a willingness to enter the conflict, or if by those acts he invites it, he must be held to have provoked the necessity for slaying his adversary, and cannot invoke the doctrine of self-defense."—*Reese v. State,* 135 Ala. 13, 33 South. 672, *Brewer v. State,* 160 Ala. 66, 73, 49 South. 336, *McBryde v. State,* 156 Ala. 44, 47 South. 302, among others.

"There are three essential elements of self-defense and they are, first, defendant must be free from all fault in provoking or bringing on the difficulty. He must not say or do anything to provoke or bring on the difficulty, must not be unmindful of the consequences in this respect of any wrongful word or act.   *   *   *   *   *Mc-Bryde's Case,* 156 Ala. 47, 55, 47 South. 302, 304, among others.

"One assaulted in his house need not flee therefrom. But his house is his castle only for the purpose of defense. It cannot be turned into an arsenal for the purposes of offensive effort against the lives of others. It is a shelter, not a sally port. A man may stand his ground there, and kill all comers who are, *without fault on his part,* about to take his life, or to do him great bodily harm." (Italics supplied.)—*Watkins v. State,* 89 Ala. 88, 8 South. 134.

"One who is the aggressor, or who is at fault in bringing on a difficulty with another, in his own house, cannot slay his adversary and claim thereafter, in self-

defense, that he was under no duty to retreat from his castle."—*Maxwell's Case,* 129 Ala. 48, 57, 29 South. 981, 984; 5 Mayf. Dig. p. 864, subdiv. 6.

The fault with special charges 14 and 16, refused by the court, is that they improperly omit from their respective hypotheses the condition that defendant was free from fault in provoking or bringing on the difficulty. Authority for this omission is thought to exist in *Harris' Case,* 96 Ala. 24, 11 South. 255. If the evidence here had been of like effect to that shown in the *Harris Case,* the conclusion in this regard could be rested on that authority. There the defendant was assailed, at midnight, in his domicile. No ill will or hostile purposes had existed, with either Harris or the deceased, toward the other. The deceased's purpose was to find a woman, who he thought was in the house. He was shown, conclusively, to have been the aggressor to an extreme degree.

In the case at bar, the defendant and the deceased had made grave threats against each other. It was shown that a short time before the tragedy defendant had declared his purpose to shoot Snider; and the inquiries and statements made by him on the day of the shooting clearly indicate that he was searching for Snider. If this phase of the testimony was credited, as, indeed, it must have been by the two juries finding defendant guilty, it is rationally impossible to dissassociate this thus accepted malevolent condition of defendant's mind from the circumstances attending the soon occurring shooting of Snider by him. The fact that Snider was in defendant's poolroom when defendant entered, and in which he was when defendant shot him, cannot neutralize the obvious effect of his threats against Snider, his expressed deadly purpose toward him, if that phase of the testimony was credited by the

jury. Regardless of the place of the tragedy, this testimony bears immediately upon the issue of freedom from fault in inviting the necessity (if so) to shoot Snider. Very naturally a repeatedly expressed, antecedent purpose to do an act is evidential that it was done according to and in consequence of *that* purpose, and not because of circumstances occurring upon the subsequent occasion. In the state of hostility which the testimony tended to show each entertained towards the other, the circumstances connected with the event itself demanded the closest scrutiny by the triers of fact, with special reference to the plea of *self-defense* under which defendant sought exoneration.

The castle doctrine comprehends only the relief from duty to retreat. To exaggerate its effect to the extent that an antecedently declared purpose to kill, accompanied with the provided ability to do so with a deadly firearm, is wholly neutralized, if the party slain is, when slain, in the defendant's *castle,* is palpably, as I view it, a radical and unsound departure from the wholesome doctrine of the *Watkins* and *Harris Cases, supra.* The exercise of what, under some circumstances, would be a sound abstract right may be so colored by *other* circumstances attending as to denude the right of its innocent, lawful character. So it is in this instance, as this record discloses.

Was there any evidence before the court below from which the jury could have found that defendant brought on the difficulty, or by his "acts or conduct" evinced a "willingness to enter the conflict?"—*Reese's Case, supra.* Aside from illuminating circumstances arising by way of inference from facts shown, there was evidence of acts or conduct of the character defined in *Reese's Case, supra.* Assuming, though against the weight of the evidence in this record, that Snider ac-

tually menaced defendant by drawing back as if to throw at him the cueball, immediately defendant appeared to deceased's (assumed) view, or immediately upon defendant's entry into the poolroom where the shooting took place, still there was testimony for the jury to consider tending to show that defendant's concurring (with Snider's stated menace) acts or conduct, or acts or conduct previous to such menace, brought defendant within the class of those who, under the Reese and other cases, cannot invoke self-defense. Juries are not bound to accept or reject complete theories to which litigants direct their testimony or contentions.

With the stated assumption of substantive fact in view, and mindful of the declared hostile purpose of defendant toward Snider, prepared, as he was, to carry that purpose into execution, presumably, at the first opportunity, the inquiry is: What act or conduct of defendant evinced provocation of the difficulty before Snider so menaced him *or* manifested a willingness to enter the conflict concurrently with Snider's menace, assuming, as indicated, that Snider did draw back to throw the cueball at defendant? The testimony affords the basis for a jury conclusion affirmative of either alternative of the stated inquiry. Some only of the testimony will be quoted.

Dave Downs, an eyewitness, testified in part: "The defendant came in. He just walked in. He had on a coat, *and had his hands in his front pants pockets.* * * * He [defendant] came in just about the time he shot. * * * Defendant came in walking leisurely along, and didn't stop until he commenced shooting. * * *"

Canterberry, an eyewitness, testified in part: "When defendant came in the door, *he had his hands in his pockets.* \* \* \*"

Faulkner, another eyewitness, testified in part: "I noticed defendant when he came in the door, and paid no further attention to him. The shots were fired immediately after he came in."

The defendant testified in part: "I just walked in the poolroom, and had walked in there 15 or 18 feet when I first saw Sam [Snider]. He walked around the table and looked up, grabbing a ball, and drew it back in a throwing position, and was facing me. I don't remember how he had the cue stick. I fired. I was between the first and second tables, and standing still. I got the pistol out of my hip pocket. I had my hands in my front pocket when I first came in. \* \* \*"

On the cross, he testified in part: "I walked in the poolroom, and didn't stop until I fired three shots. \* \* \*"

Upon the laying of proper predicates, both with a view to the contradiction of defendant as a witness and, also, with the view to the admission of the matter to follow as a confession, the solicitor propounded to Lester, the sheriff, the following question: "Mr. Lester, I will ask you if, on the night Sam Snider was killed, you, in company with the defendant, Claude Chaney, had a conversation relative to and in regard to the shooting, and if (in) that conversation Claude made substantially this statement: That he came back from the council chamber after he saw Dr. Burns, and that he went to the poolroom, and when he walked in and saw Sam Snider that it flew all over him, and that he shot him, and he didn't know what for?" In answer to said question, the witness said: "He made sub-

stantially that statement, or something similar to that statement."

This witness further testified: "It is substantially the same statement. I don't know just the way he put it. He said he went up to the council chamber and saw Dr. Burns and had a talk with him about the matter, and left about (I forget the time) and came back to the poolroom; and when he got to the poolroom he saw this young man, and just flew all over him—he had a funny feeling. He didn't know what he did; he shot him. He had a funny feeling, and said he shot him; said he didn't hardly know what happened."

If the statements of defendant to which the sheriff thus testified were credited by the jury, even though the jury should have found, against the weight of the evidence, that Snider menaced defendant as stated before, it was patently open to be concluded by the jury from that, as well as from the other testimony indicated or quoted, that defendant entered upon the execution of his previously stated hostile purpose the moment his eye fell upon Snider—the moment he entered the poolroom—and *before* he walked 15 to 18 feet into the poolroom. Being so, it is obviously unwarranted to restrict, to limit, such testimony to the *sole* effect, as is done by the majority, of showing that Snider *did not* menace defendant as stated. It is the order or relation of the occurrence of the acts or conduct of the parties which must, as always, determine the question, in such cases, whether the defendant, who asserts self-defense, was free from fault in bringing on the difficulty, or evinced a willingness to enter the conflict.—*Reese's Case, supra.*

To assume on such state of the evidence that the defendant was undisputedly shown to be free from fault, etc., in the premises, unless no menace, as stated, was found, is, to my mind, a plain invasion of the jury's

province to determine this, as all, controverted issues of fact.

In *George v. State,* 145 Ala. 45, 40 South. 962, 117 Am. St. Rep. 17, it was said of charge 3 there: "If not otherwise bad, it pretermits not entering into the conflict willingly. He may have been free from fault in bringing on the difficulty; *yet,* if he *entered into it willingly,* he cannot invoke the doctrine of self-defense." (Italics supplied.) What possible reason can be given on the evidence here for not applying the like rule of law to this defendant?

Charge 2, refused to defendant, was faulty, and therefore correctly refused, because it omitted the entertainment of the *honest* belief that he was about to be imperiled. Such was the ruling in this case on former appeal. See comment on charges 9 and 10. It is sound law.—*George's Case, supra.* I see no occasion to depart from it on this appeal.—*Wilson v. State,* 140 Ala. 43, 51, 37 South. 93.

If charge 3, refused to defendant, could be said to be a correct charge in respect of the presumption of innocence, it was substantially covered by charges 1 and 7, given at defendant's request. It is, however, an affirmatively bad instruction. It advised the jury that the presumption of innocence "should not be disregarded." The charge as written was approved in *Bailey's Case,* 168 Ala. 4, 18, 53 South. 390, 391 (charge 26), upon the authority of *Neilson's Case,* 146 Ala. 683, 40 South. 221. The pertinent ruling in *Neilson's Case* is rested on *Amos' Case,* 123 Ala. 50, 26 South. 524. The charge approved in *Amos' Case* is patently different from that considered in *Neilson's Case,* in *Bailey's Case,* and in charge 3 here. As framed on this trial it was plainly calculated to mislead the jury to the conclusion that the presumption was not to be *disregarded,* whatever the

state of the evidence showing guilt beyond a reasonable doubt. The manifest fault of the charge ought now to require that this court no longer approve it, much less reverse a judgment for its refusal, when the substantive law in respect of the presumption of innocence has been given, at appellant's request, to the jury.

Charge 18 omitted, in hypothesis, defendant's freedom from fault, etc., in bringing on the difficulty, etc. It necessarily assumes, and that without warrant, that there was no evidence upon which it could have been found by the jury that defendant by his acts or conduct provoked the difficulty, or that he entered into the conflict willingly.—*George's* and *Reese's Cases, supra.*

I have considered the record with care. To my mind, the reversal is without support on the record here.

SOMERVILLE, J., concurs in the dissent and in the foregoing opinion expressing the reasons and grounds therefor.