# McClain *v.* The State.

## *Murder.*

### (Decided April 10, 1913.   62 South. 241.)

1. *Criminal Law; Change of Venue; Evidence.*—An examination of the evidence held not sufficient to satisfy reasonably that defendant could not obtain a fair and impartial trial in the county where the trial was held.

2. *Homicide; Evidence; Threats.*—Where the prosecution was for the murder of a woman, a statement made by defendant with reference to a dispute over payment for land which defendant bought from her husband, killed at the same time, that the husband would never

[McClain v. The State.]

live to take the land back, is admissible, although susceptible of an innocent meaning.

3. *Same; Matters Preceding the Act.*—In explanation of the statement by defendant that the husband would not live to take back the land, it was not admissible to introduce evidence that the husband of deceased was an old man, and had previously taken back the land from other purchasers, the husband's age being already in evidence, and the previous taking back of the land being incompetent on any issue.

4. *Same; Appearances; Blood Spots.*—Where the murder was committed under such circumstances that blood would probably have spattered on the murderer, a witness could testify that spots which he observed on defendant's clothing several days after the murder looked like blood, since that fact could not have been presented to the jury otherwise than as the conclusion of the witness.

5. *Same; Subsequent Declarations of Defendant.*—In a prosecution for murder, it is proper to admit evidence that defendant had inquired during the holding of the inquest, and before anyone had been accused of the crime, whether his name, or that of others with whom he was jointly charged, had been mentioned. ·

6. *Same.*—It is also proper to admit evidence that, after the discovery of the murder, defendant had inquired of a woman who lived on his place whether she could swear where he was every night up to the time of its discovery.

7. *Same; Acts of Co-Conspirators.*—Where the declarations of defendant were in evidence, and there were other facts implicating two other persons in a plot with him to commit the homicide, evidence that one of the others was seen going towards the place of the homicide is admissible.

8. *Same; Instructions; Participation.*—A charge requiring an acquittal unless defendant participated in the crime, is capable of meaning or construction that physical participation by him was necessary, and is misleading, where there was evidence tending to show a conspiracy between defendant and two others, to commit the crime.

9. *Evidence; Burden; Extent.*—A defendant's guilt is not required to be proven clearly, fully, and conclusively.

10. *Charge of Court; Reasonable Doubt.*—Charges requiring an acquittal on account of a reasonable doubt not arising from the evidence, or not existing on the face of the whole evidence, are improper.

11. *Same.*—A charge that, if under the evidence, one juror is not satisfied of defendant's guilt to a moral certainty, it would be wrong for such a juror to vote for a conviction, is properly refused as argumentative and misleading.

12. *Same.*—A charge that if by reason of the evidence relative to the alibi, the jury have a reasonable doubt of defendant's guilt, they should acquit, is erroneous in predicating the doubt on the evidence of the alibi alone.

13. *Same.*—A charge that the jury must be satisfied to a moral certainty that the proof is wholly inconsistent with any rational conclusion other than defendant's guilt, and that unless so convinced by the evidence, etc., they would each venture to act in matters of the

[McClain v. The State.]

highest concern to themselves, is inherently bad, as well as argumentative.

14. *Same.*—A charge that a reasonable doubt in the mind of one juror would render a verdict false, is misleading in failing to state that such a doubt must persist in the face of a joint consideration of all the evidence by the whole jury.

15. *Same.*—A doubt as to the truth is not a proper predicate for an acquittal, and hence, a charge that the question for the jury is whether a reasonable doubt exists in their minds "as to the truth," after considering all the evidence, is improper.

16. *Same; Matters Not in Evidence.*—A charge which is based upon facts not in evidence is properly refused.

17. *Same; Presumption of Innocence.*—A presumption of innocence in a criminal case attends a defendant to the point only where the evidence convinces the jury of his guilt beyond a reasonable doubt.

18. *Same; Covered by Those Given.*—The court will not be put in error for refusing charges substantially covered by written charges given.

19. *Same; Co-Conspirators; Conspiracy.*—Where a defendant is charged with murder jointly with two others, a charge asserting that the jury must be satisfied beyond a reasonable doubt of a conspiracy before they can convict, bases his guilt solely on the theory of a conspiracy, singles out parts of the evidence, and invades the province of the jury.

20. *Same; Credibility of Witness.*—A charge asserting that any contradictory statement made by a witness may be sufficient to cause a reasonable doubt, violates common sense.

21. *Same; Effect of Verdict.*—A defendant is without right to have a jury admonished that there is no appeal from their finding on the facts.

22. *Same.*—A defendant is without right to have a jury admonished that it would be improper for them to consider whether defendant might be pardoned after conviction.

23. *Witnesses; Impeachment; False Testimony.*—The giving of false testimony by a witness does not necessarily authorize the jury to disregard all of the witness's testimony.

APPEAL from St. Clair Circuit Court.

Heard before Hon. JAMES E. BLACKWOOD.

Bud McClain was convicted of murder and he appeals. Affirmed.

Defendant was jointly indicted with Cleve and Will Campbell for the murder of Marcella Lutes, an aged woman, living with her husband, Jacob C. Lutes, at their home in St. Clair county, very near the border of Etowah county, adjoining.

There was a severance by the defendants, and each was successively tried and found guilty as charged, and sentenced to life imprisonment.

Before he was put upon trial defendant, on May 2, 1913, filed a petition for a change of venue averring that he could not obtain a fair and impartial trial in St. Clair county. In support of this averment the petition sets up the following facts:

Jacob Lutes and his wife, Marcella, were murdered in their home on the 6th or 7th of November, 1911. The murder was done with a hatchet or similar instrument, and was peculiarly brutal and bloody in the manner and circumstances of its execution, and was followed by the robbery of the deceased of a large sum of money kept by them in the house.

The murder was followed by great public excitement and indignation, and extraordinary activity by officers and citizens looking to the prompt discovery and punishment of the perpetrators of the crime. To this end a special detective was employed, and a large reward offered.

The murders were committed on Monday or Tuesday night, and were not discovered until the Thursday following. Hundreds of people from St. Clair and Etowah counties hurried to the scene, and a coroner's inquest was held, but without conclusion as to the authorship of the crime. The discussion of the crime was constant and general throughout both counties both among the people and in the newspapers.

This excitement and activity had not abated when petitioner and the Campbells were charged with the murder and arrested and incarcerated on February 3, 1912—defendant and Will Campbell being taken to the Birmingham jail, and Cleve Campbell to the Ashville jail.

[McClain v. The State.]

At the preliminary trial of the defendants about March 7-10, 1912, a confession, alleged to have been obtained from Cleve Campbell, by a pretended fellow prisoner, and overheard by a deputy sheriff, was put in evidence against them through those agencies. About 2,000 people were in Ashville during the preliminary trial, and heard or were informed of this testimony, and it, with a full report of the other evidence and proceedings, was published in the local and in the Gadsden daily papers, with sensational headlines and comments, and with frequently repeated assumptions and statements that defendants were undoubtedly guilty of the crime, including one statement that petitioner was regarded as the ring-leader. The reports of the preliminary trial were made to the Gadsden papers by one Gallant, who was administrator of the estate of the victims of the murder, and the papers circulated generally in the two counties and were read in hundreds of homes.

Numerous exhibits are made of these various newspaper reports, of which the following are fair samples: "March 8, 1912. Will and Cleve Campbell and D. S. McLain Committed Foul Crime. Buried Hatchet in Heads. Ate Supper with Aged Couple, and then Will Campbell Struck them Down. House was Ransacked and Money Secured. Bloody Hatchet Hurled in Creek. Feeling is Intense at Scene of the Trial, But no Fear is Felt for Defendants. * * * There was no show of disorder and the defendants are believed safe from mob violence, although feeling against them is running very high. The people appear to be willing to await the course of the law, slow though it may be."

Similar commentaries in denunciation of the three accused men have continued to appear from time to time in said newspapers, and the general feeling against them, and belief in their guilt, has not been allayed up

to the week of the final trials in the circuit court, about April 22, 1913. The Campbells were separately tried before the day set for petitioner's trial, and about thirty of the venire in each case disqualified themselves by avowing fixed opinions resulting from the reading of the newspaper reports.

The petition is signed and sworn to by the defendant McLain. The hearing was on the sworn petition and the newspaper exhibits attached thereto, no other affidavits or testimony being offered on either side, and the petition was denied by the court.

Numerous exceptions are based on rulings on evidence, which are sufficiently shown in the opinion.

The following are the charges referred to in the opinion:

"F. I charge you that, although there may be no probability of the innocence of the defendant, yet if there is in the minds of the jury a reasonable doubt of his guilt, it is the duty of the jury to give the defendant the benefit of the doubt and find him not guilty.

"G. If the jury believe, after a consideration of the evidence or any part thereof, that there is a probability of defendant's innocence, then they should acquit.

"H. If, after considering all the evidence, you should find that there is one single fact proved to the satisfaction of the jury which is consistent with the defendant's guilt, this is sufficient to raise a reasonable doubt, and you should acquit.

"I. If there is one single fact proven to the satisfaction of the jury which is inconsistent with the defendant's guilt, this is sufficient to raise a reasonable doubt, and you should acquit.

"J. The jury must be satisfied clearly, fully, and conclusively, and to a moral certainty, of defendant's guilt before they can convict him."

"O. You must be satisfied, clearly, fully, and conclusively, and to a moral certainty, of defendant's guilt before you can convict him."

"K. If, under the evidence, all the evidence having been considered, any one juror is not satisfied of defendant's guilt to a moral certainty, it would be wrong for such juror to join in a verdict of conviction.

"L. A witness who gets a part or all of the reward offered for the arrest and conviction of the defendant, such fact goes to his credibility, and it is for the jury to say what amount of credence, if any, they give such witness.

"M. The defendant enters this trial with the presumption of innocence, and this is a fact in the case which must be considered with the evidence, and should not be disregarded.

"N. The presumption of innocence attends the accused, and terminates only when the evidence has reached the point that convinces the jury beyond all reasonable doubt of the defendant's guilt."

"P. If, after considering all the evidence in this case, there exists in your mind a reasonable doubt as to whether defendant participated in the commission of the crime, as charged in the indictment, then your verdict must be not guilty.

"Q. The defendant sets up an alibi in this case, and the burden of proof is not shifted when he undertakes to prove it, and if, by reason of the evidence in relation to such alibi, you should entertain a reasonable doubt as to defendant's guilt, he should be acquitted, although you may not be able to find that the alibi has been fully proven.

"R. You must be convinced beyond all reasonable doubt, and to a moral certainty, from all the evidence in this case that there was a conspiracy between defendant

Will Campbell and Cleve Campbell to take the life of Marcella Lutes, before you can convict the defendant in this case."

"X. The only evidence of a conspiracy in this case is the evidence of the witness John McLemore, and you must be convinced beyond a reasonable doubt, and to a moral certainty, from all the evidence in the case that there was a conspiracy between the defendant and Will and Cleve Campbell to take the life of Marcella Lutes, before you can convict defendant as charged in this indictment."

"S. If you believe from all the evidence in this case that the witness John McLemore was sworn as a witness, and testified before the coroner's court that investigated the death of Mrs. Lutes, and if you further find from all the evidence that the said witness swore falsely to any material matter inquired of by the said jury in reference to the death of Mrs. Lutes, then the jury would be authorized to disregard the whole testimony of such witness.

"T. Before you can convict the defendant you must be satisfied to a moral certainty, not only that the proof is consistent with defendant's guilt, but is wholly inconsistent with every other rational conclusion; and, unless the jury are so convinced by the evidence that you would each venture to act on that decision in matters of the highest concern and importance to your own interest, then you must find defendant not guilty.

"U. The burden is on the state to prove to your satisfaction, and to a moral certainty, that a crime has been committed, and also that the defendant committed, or participated in the commission, of such crime; and if, under the evidence, there exists in your minds a reasonable doubt as to whether the state has met the burden

[McClain v. The State.]

that the law imposes in either of said respects, it will be your duty to render a verdict of not guilty."

"Y. If proof has been made of contradictory statements or declarations, made by any witness, this may be sufficient to generate in your minds a doubt of defendant's guilt, and justify a verdict of acquittal.

"Z. A verdict of conviction would not be true if any member of your panel has a reasonable doubt, under the evidence, of defendant's guilt, as charged in the indictment."

"AA. Justice requires that you acquit the defendant, unless you can say to a moral certainty from the evidence that he is guilty as charged in the indictment.

"BB. You are the sole judges of the facts in this case, and under the law, there is no appeal from your verdict on the facts.

"CC. The sole matter for you to consider is whether defendant is guilty as charged in the indictment; and if any reasonable doubt exists in your minds, after considering all the evidence as to the truth, you should acquit the defendant.

"DD. In arriving at your verdict, it would be improper for you to consider whether the defendant might or might not be pardoned at some future time, in the event of a verdict of guilt."

JOHN W. INZER, and INZER & INZER, for appellant. Counsel discuss the motion to dismiss the appeal, but in view of the fact that it was not discussed in the opinion, it is not deemed necessary to be here set out. The court erred in declining to grant a change of venue on the showing made.—*Posey's Case,* 73 Ala. 490; *Seams' Case,* 84 Ala. 410; *Ex parte Banks,* 28 Ala. 28; Acts 1909, p. 212. The court erred in admitting statements of the claim made by defendant several months before

the murder that Lutes would not live to get his place back. The fact that Will Campbell was seen going towards the place of the murder was not admissible against this defendant.—*McAnally v. State,* 74 Ala. 9; 1 Greenl. sec. 111. Counsel discuss charges given and refused, but without further citation of authority.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The court properly denied the application for a change of venue. —*Byers v. State,* 105 Ala. 31; *Hawes v. State,* 88 Ala. 37; *Godau v. State,* 179 Ala. 27; *Jones v. State,* 181 Ala. 93; *Hussey v. State,* 87 Ala. 121. Proof of motive, though weak and inconclusive is admissible where it is shown that a crime has been committed, and the circumstances point to defendant as the guilty agent.—*Tate v. State,* 94 Ala. 14; *Duncan v. State,* 84 Ala. 31. The court proply admitted the evidence as to the blood stains.—*Sylvester v. State,* 72 Ala. 201; *Vaughan v. State,* 130 Ala. 18. Motion to exclude evidence after a question has been asked and a relevant answer given comes too late.— *McAlmon v. State,* 96 Ala. 98. It was competent to show that the co-defendant was seen going towards the scene of the crime, or returning therefrom on the night of the tragedy.—*West v. State,* 168 Ala. 1; *Collins v. State,* 138 Ala. 57; *Hunter v. State* 112 Ala. 77. Counsel discuss the charges refused with the insistence that they were properly refused, but without further citation of authority.

SOMERVILLE, J.—Upon a very careful consideration of the question, we are not reasonably satisfied that defendant could not obtain a fair and impartial jury and a fair and impartial trial in St. Clair county.

The facts shown by the defendant's affidavit, as dis-

tinguished from mere conclusions, are (1) great popular excitement and wrath over the commission of the crime; (2) extraordinary interest in the preliminary trial, as manifested by the attendance of 1,500 or 2,000 people; (3) prejudicial assertions of defendant's guilt in several newspapers in general circulation in the county; and (4) fixed opinions as to the guilt of the Campbells, who were jointly indicted with him, on the part of many of the veniremen just preceding defendant's trial. It may be fairly asserted that these conditions accompany or follow the commission of all very brutal crimes in whatever community they may occur. It is certain, also, that newspaper reports of such crimes, accompanied by sensational comments and denunciations of the accused, are likely to inflame the sentiments of certain classes of the people and to engender in their minds a passive conviction, more or less permanent, of the guilt of the accused.

We are not prepared to concede, however, that the sensational language of a newspaper reporter or special correspondent used in "writing up" such cases as this may be safely taken as a reflection of general public sentiment; nor that it may be lightly assumed that such statements as those here shown are capable of permanently molding and fixing the opinions of the more intelligent classes of the people to the extinction of their sense of fair play, and the suppression of their sober second thought.

Other than the conclusions of the affiant himself, and the inferences drawn by him as to the effect of the newspaper reports, there is nothing to show such a state of inflammation and prejudice against him in the public mind as might be presumed to pervade the jury box and dominate the verdict to be rendered. And, other than the expression of a vague apprehension of it in one or

two of the newspaper articles, there is nothing that tends in the slightest degree to suggest the thought at any time of mob violence towards the accused, or of any animosity against them except, perhaps, as they might be shown to be guilty of the crime charged against them.

The factor of racial prejudice, and the general atmosphere and special conditions shown in the case of *Seams v. State,* 84 Ala. 410, 4 South. 521, are not exhibited here. Something more is needed besides the statements and conclusions of defendant, and nothing whatever is offered in support of them. What was said in *Hawes v. State,* 88 Ala. 37, 54, 7 South. 302, 307, is in point here: "The defendant swears that prejudice against him not only continued, but grew more bitter against him. Pretermitting the infirmity of interest which naturally infects his testimony, it is manifest that he was not in a position to know much about the state of the public mind, and for this reason, of itself, what he says is entitled to very little weight, except in so far as he is corroborated by other testimony."

Six months had elapsed since the murders, and two months had passed since the arrest of the accused, and it does not appear that any difficulty was experienced in selecting from the venire of 43 men 12 jurors without fixed opinions as to defendant's guilt, nor that the solemnity of their duty to the state and to accused was obscured by any atmosphere of prejudice from within or from without. Nor does the verdict itself, with respect to the punishment inflicted, indicate a responsiveness to an inflamed public sentiment, or to an unreasoning demand for conviction without adequate proof.

It is worthy of notice, also, that, although a severance was ordered for the three accused men on March 27th, and the statute requires the application to be made "as early as practicable before the trial, it was not made

by defendant until May 2d, just two days before his trial, and *just after* a verdict of conviction in the case of Will Campbell.

Under the principles and reasoning stated in the recent case of *Godau v. State,* 179 Ala. 27, 60 South. 908, not unlike this in its material aspects, we are constrained to hold that the trial court did not err in overruling the application. We have considered its merits de novo, as required by the amendatory act. of August 26, 1909 (Acts Sp. Sess. 1909, p. 212), and we are not reasonably satisfied that it should have been granted.

The trial court properly allowed state's witnesses to testify to a conversation with and statement by defendant, made a short while before the murder, with reference to dispute between him and Jacob Lutes, as to payment for a place which defendant had bought from Lutes, that Lutes would never live to take the place back from defendant. The statement was of course easily susceptible of an innocent meaning, but it was also susceptible of a sinister meaning, and its interpretation and weight were manifestly matters for the jury to determine.

To rebut the theory of an evil meaning, defendant offered to show that Lutes was an old man, and that he had formerly several times taken the place back from other purchasers. There was no error in excluding this testimony. That Lutes was an old man 72 years of age was in evidence and was not disputed, and the fact of his former recaptions of the land was not competent evidence on any of the issues of this case.

The witness Knight was properly allowed to testify that on Friday after the murder, which occurred on Monday or Tuesday preceding, he observed red splotches on defendant's trousers leg which looked like blood. —*Mayberry v. State,* 107 Ala. 64, 18 South. 219; *James*

*v. State,* 104 Ala. 20, 16 South. 94.   The circumstances of the murder were such as to render it probable that blood would have splattered on the murderer, and the fact could not have been presented to the jury other than by the opinion or conclusion of the witness.

State's witnesses were properly allowed to state that, during the sitting of the coroner's jury, defendant asked them whether his name or the Campbell brothers' had been mentioned at that inquest; none of them having at that time been accused of the crime.   The inquiry displayed an anxiety which had a legitimate tendency to show a consciousness of guilt in defendant's mind, and its probative value was for the jury.

So Mrs. Knight, who lived in a house on defendant's place a short distance from defendant's home, was properly allowed to state that defendant inquired of her, shortly after the murder, "whether she could swear where he was every night up to the discovery of the murder."

According to the state's witness, McLemore, defendant stated to him, several weeks before the murder was committed, that he had planned to kill and rob Lutes and his wife, and implicated the Campbells in the plot. Other evidence, introduced later, also tended to implicate the Campbells.   It was therefore competent for the state to show that Will Campbell was connected with the perpetration of the crime, and, to that end, to show by the testimony of Crump and Hollingsworth that Campbell passed by Crump's house, riding a horse along the public road, in the direction of the Lutes home, on Tuesday night before the murder was discovered; the evidence indicating that the murder occurred on Monday or Tuesday night.

We have examined and considered all the other exceptions taken by defendant to rulings on the evidence,

and find them so palpably without merit that their separate statement and discussion would not be justified.

A reasonable doubt not arising from the evidence, or not existing in the face of the whole evidence, is not a proper predicate for acquittal. Charges F, G, H, and I, refused to defendant, violate this principle.

A defendant's guilt need not be proved "clearly, fully, and conclusively," and, thus framed, charges J and O exact too high a degree of proof.

Charge K is both argumentative and misleading, and charge L is abstract; there being no evidence tending to show that any of the state's witnesses received any part of the reward offered for the arrest and conviction of defendant.

The presumption of a defendant's innocence attends him during the trial only until it is overthrown by evidence of his guilt beyond a reasonable doubt.—*Waters v. State*, 117 Ala. 108, 22 South. 490. Charge M violates this principle.

Charge N is fully covered by given charges 25, 40, 41, and 43.

Charge P is misleading in that it requires an acquittal unless defendant *participated* in the commission of the crime, which is subject to the interpretation that *physical* participation was necessary. It was, however, given in the same language in charge 33.

A reasonable doubt requiring an acquittal cannot be predicated alone on the evidence relating to proof of an alibi, as asserted in charge Q.

Defendant's guilt did not depend solely on proof of the theory of a conspiracy, nor on its proof beyond a reasonable doubt. Charge R and X violate this principle, single out a part of the evidence, and invade the province of the jury.

The giving of false testimony does not authorize the jury to disregard all of a witness' testimony (*Prater v. State,* 107 Ala. 26, 18 South. 238), as erroneously asserted by charge S. Defendant had the benefit of this very charge, however, in given charge 49. .

Charge T has been repeatedly condemned, and charge U is found in other given charges over and over again.

Charge Y asserts that any contradictory statement made by any witness may be sufficient to generate a reasonable doubt of defendant's guilt. The charge is purely argumentative, and violates common sense.

A reasonable doubt in the mind of one juror would not render a verdict false unless such doubt persisted in the face of a joint consideration of the whole evidence by all of the jury. Joint consideration is an imperative duty, and may often silence individual doubt as well as confirm them. Charge Z is in this aspect highly misleading.—*Holmes v. State,* 136 Ala. 80, 34 South. 180. It was, however, given for defendant in charges 31, 35, and 57.

Charge AA is merely argumentative, but its requirement of proof of guilt to a moral certainty was repeatedly stated in other charges.

Charge BB is admonitory and argumentative. It embodies correct propositions of law, but defendant had no right to have the jury admonished that there is no appeal from their verdict on the facts.

A reasonable doubt "as to the truth" is not a proper predicate for acquittal, as asserted in charge CC.

Charge DD is admonitory and argumentative. Defendant had no right to have the jury instructed that it would be improper for them to consider whether he might or might not be pardoned at some future time, if they found him guilty.

We find no error in the record, and the judgment of conviction will be affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.