58 So.2d 623

## CAMPBELL v. STATE.

6 Div. 364.

Supreme Court of Alabama.

March 10, 1952.

Rehearing Denied May 15, 1952.

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

Douglas Hendrix and W. Ryan deGraffenried, Tuscaloosa, for appellant.

STAKELY, Justice.

The appellant Charles Campbell was indicted and tried for rape. He received the

death penalty. His appeal comes to this Court under the automatic appeals act, Code 1940, Tit. 15, § 382(1) et seq.

On June 15, 1951 appellant and two companions having escaped from Draper Prison, entered the home of Mrs. Ardie Garner in Tuscaloosa County, while she was in the bathroom upstairs. Her son ten years of age was downstairs. The appellant and one of his companions went upstairs and demanded that she come out of the bathroom, threatening to shoot through the door unless she complied with their request. As a result she came out of the bathroom partially dressed and the two men took her downstairs at gunpoint. Appellant and one of his companions then returned upstairs leaving Mrs. Garner and her young son with the third companion, one Noe. Locking the boy in the downstairs bathroom, Noe, according to testimony which was later excluded and to which we shall later refer, took liberties with the prosecutrix and then took her and her son upstairs.

When all of the parties were upstairs, Mrs. Garner was forced to alter some of her husband's clothes to fit the men. After the three men had shaved and put on the altered clothes, appellant forced Mrs. Garner into the bedroom and at the point of a pistol forced her to submit to him, pointing the gun at her through the commission of the act. Her hands were tied behind her back at the time of the act.

The three men then tied Mrs. Garner and her son with cord and taped their mouths. Then they placed them in a small closet and left the house. Mrs. Garner managed to release her hands and escaped from the closet, but when she saw the men still outside the house, she returned to the closet with her boy and stayed there until she felt sure the men had left.

The home where Mrs. Garner lives is in a wooded area and is the last house at the end of a dead end road about seven miles from the City of Tuscaloosa. The nearest house to her home is that of her mother-in-law which is about 200 yards distant. When the men left she immediately notified the officers. She had never known or seen the men before.

I. The indictment against appellant was returned August 3, 1951. The appellant was arrested June 17, 1951. Arraignment was had August 6, 1951 at which time an attorney was appointed by the court as counsel for appellant. Trial was set for August 13, 1951. On August 8, 1951 an additional attorney was appointed by the court to assist in the defense of appellant. On August 8, 1951 both attorneys interviewed appellant in the Greene County jail where he was being held.

On August 9, 1951, counsel for appellant filed three motions in his behalf, a motion for a continuance, a motion for a change of venue and a motion for a sanity hearing. Each of these motions was overruled by the court prior to trial of the main case. Evidence was taken and submitted for and against each of the motions. The evidence shows that the Greene County jail is about 36 miles from Tuscaloosa where appellant was indicted and tried and where counsel for appellant reside. At no time were counsel denied permission to visit the jail or refused the right to talk with appellant. According to appellant he is twenty-three years of age, having been born at Centerville, Alabama, on February 10, 1928. His mother is dead and his father lives at Albuquerque, New Mexico, where it is claimed he earns substantial wages as a diesel mechanic. According to appellant, appellant received an undesirable discharge from the armed forces and during the last five years had been in the Federal Reformatory and had received a number of prison sentences. He had stolen in this period of time about 35 cars. He had gone through the ninth grade in school, had no physical ailment and had suffered no injury. It was claimed by his counsel that his mental condition was such that more time was needed to examine his family history and background. There was no error in overruling the motion for continuance. This was a matter which was within the sound discretion of the court and no abuse of such discretion has been shown. Peterson v. State, 231 Ala. 625, 166 So. 20; Jarvis v. State, 220 Ala. 501, 126 So. 127.

II. There was no error in overruling the motion for change of venue.

The defendant on such a motion has the burden of showing to the reasonable satisfaction of the court that a fair and impartial trial cannot be had and an unbiased verdict cannot reasonably be expected. Godau v. State, 179 Ala. 27, 60 So. 908; Patton v. State, 246 Ala. 639, 21 So.2d 844. It is claimed that publication in the Tuscaloosa News of certain articles, with an erroneous statement of facts, would have a tendency to inflame the public mind. One article under date of June 16, 1951, was as follows:

"Tuscaloosa–Northport, Alabama, Monday July 16, 1951 Jailer, Deputy Lee, armed posse foil Eutaw Jailbreak attempt. Trio facing charges here leads effort: Surrender Bill Lee talks prisoners into giving up; Banta's freedom is shortlived."

Another article under date of July 16, 1951, was as follows:

"Three Convicts Captured in Delhi, Louisiana, Police Chief Hershel Morris said three Alabama Escaped convicts arrested here early today admitting raping a forty year old mother at Tuscaloosa County, Alabama."

There was some testimony introduced by appellant tending to show much indignation of the people of Tuscaloosa over the alleged act of appellant, but even in this testimony, as well as in testimony introduced by the state, it was made clear that the witness or signer of the affidavit as the case might be, believed that a fair trial based on the evidence adduced could be had. In Godau v. State, 179 Ala. 27, 60 So. 908, 910, it was said:

"So long as we have newspapers we may expect to have through them the report of crimes, and it is not to be unexpected that, when a homicide is committed * * * the newspapers of the community, answering the public interest, will furnish the defendant with at least some material upon which to base an application similar to the one under discussion."

Also in McClain v. State, 182 Ala. 67, 62 So. 241, 243, it was said:

"We are not prepared to concede * * * that the sensational language of a newspaper reporter or special correspondent used in 'writing up' such cases * * * may be safely taken as a reflection of general public sentiment; nor that it may be lightly assumed that such statements as those * * * shown are capable of permanently molding and fixing the opinions of the more intelligent classes of the people to the extinction of their sense of fair play, and the suppression of their sober second thought."

The mere belief of the defendant or of his witnesses that he cannot receive an impartial trial is not sufficient to entitle him to a change of venue. Patton v. State, supra; Lee v. State, 246 Ala. 343, 20 So.2d 471; certiorari denied 325 U.S. 888, 65 S. Ct. 1576, 89 L.Ed. 2002.

III. There was no error in overruling the motion for a sanity hearing. The petition alleged that "there is reasonable ground to believe said defendant is insane and was insane at the time of the commission of said offense." The petition prayed for appointment of and report by not less than three specialist practitioners in mental and nervous diseases or for a report by the Superintendent of Alabama State Hospital for the Insane. Section 425, Title 15, Code of 1940, provides in part as follows:

"Whenever it shall be made known to the presiding judge of a court by which an indictment has been returned against a defendant for a capital offense, by the written report of not less than three reputable specialist practitioners in mental and nervous diseases, appointed by the judge, or by the written report of the superintendent of the Alabama state hospitals, that there is reasonable ground to believe that such defendant was insane either, at the time of the commission of such offense, or presently, it shall be the duty of the presiding judge to forthwith order that such defendant be delivered by the sheriff of the county to the superintendent of the Alabama state hospitals, who

is charged with the duty of placing such defendant under the observation and examination of himself and two members of his medical staff to be named by him, constituting a commission on lunacy, with the view of determining the mental condition of such defendant and the existence of any mental disease or defect which would affect his present criminal responsibility, or his criminal responsibility at the time of the commission of the crime."

No written report by three or more reputable specialist practitioners in mental and nervous diseases was filed or requested by the court nor was a written report of the Superintendent of the Alabama State Hospitals filed or requested by the court. The court is under no duty to appoint such a commission nor to direct the Superintendent to make a report. The court simply has the inherent right to seek these aids for advisory purposes when the court in its discretion thinks such aids will be helpful. Oliver v. State, 232 Ala. 5, 166 So. 615; Reedy v. State, 246 Ala. 363, 20 So.2d 528; Benton v. State, 245 Ala. 625, 18 So.2d 428; Burns v. State, 246 Ala. 135, 19 So.2d 450, certiorari denied 324 U.S. 843, 65 S.Ct. 589, 89 L.Ed. 1405.

The court heard and saw appellant testify in person before the court on his motions. It heard the testimony of other witnesses on the issue of insanity. We think the court reached a proper and correct conclusion in overruling the motion for a sanity hearing.

IV. The trial court at first permitted testimony regarding the acts and conversation which took place between Mrs. Garner and Noe downstairs during the time appellant and his other companion were upstairs. It developed that appellant and his other companion had gone upstairs to secure clothes which they later compelled Mrs. Garner to alter. The testimony was evidently admitted on the theory of a conspiracy. Skumro v. State, 234 Ala. 4, 170 So. 776. But it is enough to say that the evidence here referred to was subsequently excluded by the court.

V. The prosecutrix testified in detail as to the occurrences in her home leading up to the act complained of. After this detailed testimony she was allowed to testify that the intercourse took place without her consent. There was no error in this ruling as this testimony was but a shorthand rendition of the facts which were given in detail. Jones v. State, 104 Ala. 30, 16 So. 135; Hall v. State, 248 Ala. 33, 26 So.2d 566.

We have carefully examined the entire record and find no error.

Affirmed.

All the Justices concur.