110 So.2d 329

**Honor B. GORDON**

v.

**STATE.**

**8 Div. 60.**

Court of Appeals of Alabama.

Feb. 25, 1958.

Rehearing Denied March 18, 1958.

Affirmed on Mandate March 24, 1959.

John Patterson, Atty. Gen., and Robt. G. Kilgore, Jr., Asst. Atty. Gen., for the State.

W. A. Barnett, Florence, for appellant.

CATES, Judge.

Honor B. Gordon, indicted October 12, 1956, tried to a jury October 23 and 24, appeals from his conviction of assault with intent to murder, which resulted in the judge sentencing him to two years in prison.

The evidence for the State tended to show that Willie Tucker, who had a farm on the Cloverdale Road some eight miles from Florence, Alabama, was in that neighborhood on the morning of July 16, 1956, and met up with Gordon near a store at which it seems Tucker had been visiting with one Ellis Grisham. Willie's version went:

"They was out at the hog pen looking at Ellis' hog. I had been to the store and I had been visiting Ellis. I went to the store and got some chewing tobacco and I went back to Ellis' and Honor B. and Ellis and Henry Murphy was out there. I said, 'what you say, Gordon?', and he said, 'How you, Tuck?' We looked at the hog and talked awhile and came back to the house. We stood there in the yard and talked a few minutes and then he asked what I was fixing to do. I said, 'I am going to the house and get my tractor, I am going to Mr. Johnny Dodd and break some ground', and Honor B. said, 'Come on and go with me to the new ground, I want to kill me a crow and hoe a little cotton'. I got in the car and there was a double-barrel shotgun laying in the back of the car,

laying on the back seat of the car. I got in and we started driving off, drove off a few steps, and I says to him, I says, 'You been trading cars', and he said, 'No, this belongs to the Company'; so he said, 'Looks like everybody is against me, including you too'. I said, 'No, I am not against you; what's I done to you?' And he spoke up and said, 'Yes, you told Velacee a lot of lies on me'.

"Q. Who is Velacee? A. Jim Griffin's wife.

"Q. Was Honor B. dating her? A. I don't know, but that's what he told me, said, 'You told Velacee a lot of lies on me'. I said, 'No, I ain't told Velacee nothing on you; you go get her and I will tell her'. He didn't say anything then, and then he said, 'If I had saw you yesterday, I would have killed you'—we was done past my little house then. He didn't stop to put me out, and he said, 'If I had saw you yesterday I would have killed you'."

\*　\*　\*　\*.　\*　\*

"A. Well, as I stepped out of the car he stepped out right behind me with his double-barrel shotgun and pulled the right-hand hammer back and throwed it on me and said, 'Don't you move, I will blow you in two'; he had it at my stomach. He said, 'Don't you believe me?' I said, 'Yes, you can; you have your gun on me with the hammer back'. I pleaded. I said, 'Go get Velacee'. He said, 'I will kill you.' I turned to walk off and he come and struck me in the back of the head with the gun; that knocked me down. This arm (indicating) struck the ground and I throwed this arm (indicating) up and he hit it and broke that arm. I called Ellis Grisham. He said, 'You don't call him no more, I will blow your head off'. About that time a car cranked up at Ellis'."

A doctor testified that he examined Tucker on July 26 (sic) finding a comminuted fracture of the ulna bone in a forearm and also a V-shaped scalp wound which required eight stitches.

Gordon's account of Tucker's injuries ran:

"\* \* \* and I got ready to leave, I said, 'Tuck, come here, I have something to tell you'. He comes on and gets in my car. I pulls off. As I was going down to his house, I said to him, 'Tuck, seems like everybody is down on me, plus you.' He said, 'What you talking about?' I said, 'Why did you go over to Velacee's and tell her I had been going with her?' He said, 'It is a God-damn lie'. He said, 'Let's go prove it'. I said, 'All right.' I stepped on the gas, I was ready to make a left hand turn, I made the turn and when I stepped on the gas, he made a lunge and jumped out and rolled up in a knot. I stopped as soon as I could and I goes back; he is over in the ditch. I pulls him up with my right hand on the shoulder of the road and when I pulled him on the shoulder, he did like this (indicating) and pulled a little blood out from his head and he splits for his house and when he splits for his house, I pulls off.

"Q. Did you strike him with a rock? A. No, sir.

"Q. Did you strike him with a gun? A. I didn't strike him with anything."

■ No question of venue was presented, since Tucker (R. p. 25) was asked, "This was in Lauderdale County, Alabama, near Pisgah Church? A. Yes, sir." Denton v. State, 263 Ala. 311, 82 So.2d 406, is worth reading as to how failure of proof of venue should be raised.

■ The defendant argues that Tucker is impeached by "his own" witnesses, in that the scalp wound, under Tucker's theory, was caused by a blow delivered with a double-barreled shotgun, whereas Gordon says such a blow would have produced a knot on Tucker's head. The defense theory was that the cut came from Tucker hitting a barbed-wire fence along-

side the ditch into which Honor says Tucker rolled on jumping from the moving car. We cannot say that the inconsistencies of testimony were material to the verdict. Thus the State brought out that the gun had "a flat piece that went on top of it"; on being asked, "Will you explain to the Jury how he hit you over the head with a gun and cut it and didn't bruise it?" Willie answered, "I did; I had on a cap."

The gun was not in evidence: the jury was properly the judge of the evidence, including weighing any conflicts.

■ Refused charge 6—on the presumption of innocence being a matter of evidence—

"Gentlemen of the Jury, I charge you that the legal presumption of innocence is to be regarded by the jury, in every case, a matter of evidence, to the benefit of which the accused is entitled, and, as a matter of evidence it attends the accused until his guilt is, by the evidence, placed beyond a reasonable doubt."

is verbatim charge 3 refused in Brown v. State, 33 Ala.App. 97, 31 So.2d 670, and charge 8, the refusal of which was held to be error to reversal, in Perry v. State, 37 Ala.App. 683, 74 So.2d 619. See Jones, Ala.Jury Ins., § 7120. In this regard, the judge (1) charged the jury here as follows:

"The defendant in this case like the defendant in every criminal case tried in our country is presumed to be innocent until his guilt is proven from the evidence beyond a reasonable doubt, and that presumption of innocence attended him when he entered upon trial and stays with him until but only until the State has met the burden of proof and has proven him guilty beyond a reasonable doubt and to a moral certainty. * * *"

(2) gave the defendant's written requested charge 7:

"The court charges the jury that the law presumes the defendant innocent

of the indictment, and this presumption continues to go in favor of the defendant until the evidence convinces the jury, beyond a reasonable doubt of his guilt; and you cannot find the defendant guilty of any offense charged in the indictment until the evidence in the case satisfies you beyond all reasonable doubt of his guilt, and you cannot find the defendant guilty of any offense charged in the indictment until the evidence in the case satisfies you beyond all reasonable doubt of his guilt, and so long as you, or any of you, have a reasonable doubt as to the existence of any of the elements necessary to constitute the offense, you should not find the defendant guilty."

Can we fairly say (1) the same rule of law was not substantially and fairly given otherwise; and, (2) in keeping with the harmless error principle voiced in Turner v. State, 238 Ala. 352, 191 So. 396, 398, the refusal "has probably injuriously affected" a substantial right of the defendant?

In Gordon v. State, 147 Ala. 42, 41 So. 847, 849, in treating a refused charge employing words as to a presumption of the accused's innocence remaining in the minds of the jury, the court said:

"Charge 21 was properly refused. A presumption is a conclusion drawn by the law, and has no relation to the condition of mind produced by proof. 23 Am. & Eng.Ency.Law, p. 967."

Thus we are brought squarely to a consideration of the presumption of innocence as evidence. Mr. Justice Foster collated and analyzed the leading cases in Mutual Life Ins. Co. of New York v. Maddox, 221 Ala. 292, 128 So. 383. Whereas the presumption of innocence is by most authorities considered as a presumption of law corollary to the onus on the moving party, it has in our cases been metamorphosed into a quasi-presumption of fact: indeed, charge 3 blessed by the court in Chaney v. State, 178 Ala. 44, 59 So. 604, 605,

218

calls the presumption "a fact in the case * * * not [to] be disregarded."

In the Chaney case, Justices McClellan and Somerville dissented and at page 58 of 178 Ala., at page 608 of 59 So. Mr. Justice McClellan said that the charge in question was substantially covered by charges 1 and 7 given at Chaney's request, viz.:

"1. The Court charges the jury that the supposition of innocence of the defendant is a matter of evidence in the case to which the accused is entitled, and it follows the defendant throughout the trial and until or until the evidence in the case convines (sic)' the jury beyond a reasonable doubt' that he is guilty."

"7. The legal [presumption?] of innocence is to be regarded by the jury in every case as a matter of evidence to the benefit of which the accused is entitled; and as a matter of evidence it attends the accused until is (sic) guilt is by the evidence placed beyond a reasonable doubt."

We have gone to the record for the foregoing.

Our court has twice refused to hold the refusal of the Chaney charge 3 as error: Hopkins v. State, 26 Ala.App. 213, 155 So. 891, and before that in Harris v. State, 25 Ala.App. 215, 143 So. 242, 244, where we find in the opinion:

"* * * Charge 9 does not state the law correctly. The presumption of innocence is an evidentiary fact, which attends the defendant in his trial only until that presumption has been overcome by the evidence beyond a reasonable doubt. After that point is reached the presumption ceases. * * *"

Charge 9 reads:

"9. The law presumes this defendant is not guilty in this case, and this presumption attends him on this trial as a matter of evidence and should not be by the jury disregarded."

In McClain v. State, 182 Ala. 67, 62 So. 241, 243, the Supreme Court overruled the effect of Chaney's charge 3, particularly as to the use of "not be disregarded" in contradistinction of being overthrown by evidence of guilt by a reasonable doubt. On the strength of this case, Judge Carr held refusal of the Chaney charge 3 was not error, Clark v. State, 36 Ala.App. 159, 57 So.2d 375.

In Booth v. State, 247 Ala. 600, 25 So.2d 427, 430, the court, per Gardner, C. J., said:

"In Refused Charge 7 is the positive statement that defendant is presumed innocent as a matter of law and that this presumption of innocence is an evidentiary fact which remains with the defendant throughout the trial of the case. Though there is a contrariety of opinion among the authorities (22 C.J.S. Criminal Law § 581, p. 896), yet our own decisions are to the effect that this presumption does not necessarily attend the defendant throughout the whole trial, but only until it is overturned by evidence which convinces the jury of guilt beyond a reasonable doubt. Waters v. State, 117 Ala. 108, 22 So. 490; McClain v. State, 182 Ala. 67, 62 So. 241; Osborn v. State, 30 Ala.App. 386, 6 So.2d 461. There was, therefore, no error in the refusal of Charge 7."

Charge 7 referred to read:

"The court charges the jury that the defendant is presumed innocent as a matter of law, and that this presumption of innocence is an evidentiary fact *which remains with the defendant throughout the trial of the case,* and before you would be authorized to convict the defendant, the law requires the State to overcome this presumption of innocence by the introduction of evidence which proves his guilt beyond all reasonable doubt and to a moral certainty, and if the jury is reasonably satisfied from the evidence that the State has not met the burden imposed by law, then the jury should acquit the defendant." (Italics supplied.)

According to Chief Justice Gardner, the vice of the charge was the use of the words italicized.

Thus, while we find that the later cases of our senior tribunal have placed a limit on the duration of the working of the presumption (McClain v. State, Booth v. State, both supra), we find no criminal case modifying the notion that the presumption is "evidence." Thus in Bailey v. State, 168 Ala. 4, 53 So. 296, 390 (erroneously cited contra, Wigmore, Evid. 3rd Ed., § 2511n) we are presented with the concept of the presumption of a fact, i. e., evidence per se: this in spite of an eloquent dissent. See also Degro v. State, 34 Ala.App. 232, 38 So.2d 354, Holman v. State, 36 Ala.App. 474, 59 So.2d 620, Perry v. State, supra.

Mr. Justice Foster, in the Maddox case, supra, pointed out that the Alabama doctrine is that stated in 1 Greenleaf, § 34, citing Newsom v. State, 107 Ala. 133, 18 So. 206, which cites in turn Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L. Ed. 481. After noting the criticism of Thayer, Wigmore and Jones, coupled with constrictions of Coffin by Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L. Ed. 624, and Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (for later dissertations, see Annotation, 12 A.L.R.2d at page 1328, § 43—civil cases—; Annotation, 152 A.L.R. at page 627—criminal cases), the court continues:

"We think that the decisions of this court firmly fix the rule as stated by Greenleaf and in the Coffin Case as the law of this state. We cannot therefore apply to the presumption of innocence, either in a criminal or civil case, the mere administrative features of those presumptions intended only to shift the burden of proceeding with the evidence. We think this presumption of innocence is a substantive right and not merely a technical incident of the trial wrought for administrative purposes, and that it should at no time be treated as having spent its force until the evidence is sufficient in the judgment of the jury to overcome it. * * *" [221 Ala. 292, 128 So. 385]

In view of the thoroughness with which this subject has been reviewed from time to time with the resultant reaffirmation in spite of criticism of the forerunner Coffin case, e. g., Harrell v. United States, 5 Cir., 220 F.2d 516, and United States v. Nimerick, 2 Cir., 118 F.2d 464, 152 A.L.R. 620, we conclude the idea is a substantial right of the defendant, of which the jury should be informed. We conclude the refusal of charge 6 was reversible error— even though the oral charge and charge 7, as we have shown, made mention of the presumption of innocence. The court charged the jury correctly but had before it a charge which expressed a correct statement of law not otherwise given.

For this error the judgment below is reversed and the cause remanded for new trial.

Reversed and remanded.

HARWOOD, Presiding Judge (dissenting).

In his oral instruction and in given Charge 7, the court fully instructed the jury as to the presumption of innocence attending the accused.

While the words of art that this presumption becomes an evidentiary fact were not used, I am nevertheless of the opinion that this omission did not probably injure the accused in any substantial right. I, therefore, respectfully dissent from the opinion of the majority.

## On Rehearing

CATES, Judge.

The Attorney General takes us to task for "holding that a defendant has a vested interest in a metaphor."

Though we fairly risk the accusation that eloquence may indeed disguise our ignorance and incur the wrath of the sententious Roman who taught, "Judex damnatur cum nocens absolvitur," we prefer to abide by the Anglo-Saxon rock of freedom: "In favorem vitae, libertatis, et innocentiae omnia praesumuntur."

Our statute has abolished the old presumption of injury that existed upon a showing of error—though a harsher doctrine as to the review of a denial of new trial also once prevailed.

Here, we consider the refused instruction as embodying a substantial right, yes, put as a metaphor—innocence is a fact until facts convince you beyond a reasonable doubt it is not a fact. "The life of the law has not been logic: it has been experience."

What more graphic presentation of our religion has ever been put than the parable of the Prodigal Son? Yes, we have given the defendant a vested interest in a metaphor and this lest the jury, without the utility of the wording, should become mixed up in metaphysical and semantical confusion, as all men can, in treating with the qualitative concept that an adverse verdict can arise only "from the evidence upon conviction of guilt beyond a reasonable doubt." This phrase may be trite, yet it should not be cavalierly relegated to the limbo of outworn cliches of mere lip service to the once noble idea of freedom embodied in the concept that the accuser has the burden of proof.

Application overruled.

HARWOOD, P. J., dissents.

After Remandment

CATES, Judge.

On authority of Gordon v. State of Alabama, Ala., 110 So.2d 334, the judgment below is due to be

Affirmed.