222 So.2d 719

**Willie Lee DAVIS**

v.

**STATE.**

**3 Div. 364.**

Supreme Court of Alabama.

May 8, 1969.

L. H. Walden, Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARWOOD, Justice.

This appellant, Willie Lee Davis, and James Leroy Embrey, were jointly indicted for the crime of robbery. A severance was granted, and upon Embrey's jury trial, he was adjudged guilty and sentenced to life imprisonment. This judgment has been affirmed. See Embrey v. State, 283 Ala. 110, 214 So.2d 567.

This appellant's trial resulted in a verdict and judgment of guilty, punishment being fixed at confinement in the penitentiary for thirty years.

Motion for a new trial being overruled, an appeal was perfected to this court.

The evidence presented by the state tends to show that around 2 A.M., on the morning of 13 February 1967, Joseph W. O'Daniels, and C. W. Lansdon, ticket agents on duty at the Union Station in Montgomery, were held up and robbed at pistol point, $239.25 being thus obtained by the robber.

James Leroy Embrey was later taken into custody by the police, and during his trial was unequivocally identified by O'Daniel and Lansdon as the man who had robbed them. This appellant, Willie Lee Davis, was not present at the robbery.

The evidence further shows that Davis and his friend Embrey, a business associate

in a shoeshine parlor in Detroit, Michigan, had come to Montgomery on a visit to Davis' mother.

Kenneth Murrell, a taxi driver, had his cab parked in the vicinity of the Union Station at the time of the robbery. He saw a muddy, black and white 1956 Chevrolet automobile parked between two trucks near the station. The Chevrolet was facing an alley.

Murrell noticed a man walking toward the Chevrolet, and at the same time a second man came running out of the Union Station to the Chevrolet. Both men entered the car, and as the second man opened the door on the right side, he turned and fired a shot toward Murrell's cab. The Chevrolet moved off down the alley, and Murrell pursued it in his cab. During the chase down various streets someone in the Chevrolet fired another shot at the cab which struck a front fender of the cab. Eventually the Chevrolet outdistanced Murrell's cab and he gave up the chase.

B. E. Reynolds, a police officer of the City of Montgomery, began his investigation of the robbery shortly after a call from O'Daniels reporting the same. Going to the Original Queen Cab stand, he found that a cab had been dispatched to 792 Ludie Street at 2:15 A.M. He went to this address around 3:30 A.M., and found a black and white Chevrolet parked in the rear. The motor was still warm. Being admitted to the house by appellant's parents, he found appellant in bed asleep. With the permission of all parties, the Chevrolet was driven to police headquarters, where Murrell identified the Chevrolet as being the one he had chased. Appellant had accompanied officer Reynolds to the police station.

A search warrant being obtained, the Chevrolet was searched. An empty 6.35 millimeter shell, as well as an unfired shell of the same calibre, was found in the Chevrolet.

Police officers F. L. McCracken and R. S. Kelley found James Leroy Embrey riding as a passenger in Original Queen Cab No. 7 around 2:30 A.M. Embrey voluntarily agreed to accompany them to the Union Station.

Other evidence shows that in a search of Cab No. 7, a pistol was found under the front seat.

This pistol, a .25 calibre Galesi, was shown by other evidence to have been purchased by the appellant from Max's Pawn Shop in Montgomery on 6 February 1967.

An empty shell found at the site of the shooting at the Union Station was shown by expert testimony to have been fired from this pistol. The shells found in the search of the Chevrolet were similar to the empty shell found at the Union Station.

For the defense, Ida Mac Davis, mother of the appellant, testified she was the owner of the Chevrolet automobile in question. The appellant, and James Leroy Embrey, and Leamon Caldwell were visiting in her home around the time of the robbery. On the night of the robbery, she had loaned her automobile to the appellant. He had returned home around 12:30 A.M., and had gone to bed, and was asleep at the time of the arrival of the officers.

The appellant in his own behalf testified that on the night of 13 February 1967, he and Embrey and their respective dates had gone to a night club. Leaving the night club, they bought a box of fried chicken and went to the home of one of the girls and ate the chicken. He and Embrey then drove to his mother's home where, after turning the Chevrolet over to Embrey, he went into the house and went to bed.

Appellant admitted purchasing the pistol found in Original Queen Cab No. 7, but stated that after purchasing it he had placed it in his luggage in his mother's home, and had not turned it over to Embrey nor given Embrey permission to use it, and was unaware it had been removed from his luggage.

The appellant denied participation in the robbery.

The court refused to give the following written charge requested by the defendant:

"Charge 12. Now, gentlemen, this defendant, just as every other defendant who comes into court charged with a criminal offense, is presumed by law to be innocent, and that presumption of innocence attends him, as a matter of evidence, during the course and progress of the trial, until such time when the jury is convinced beyond a reasonable doubt of his guilt."

There can be no question under the decisions of this court and of the Court of Appeals but that it is error to refuse a charge of similar import as Charge 12, supra, when such requested charge is not otherwise fairly and substantially covered either in other given written charges or in the oral instructions of the court.

■ Our decisions are to the effect that the presumption of innocence in favor of an accused is evidence which attends the accused until other evidence is presented (usually by the state) sufficient in the judgment of the trier of fact to overcome this primary presumption.

This principle was not covered by any of the written charges given at the defendant's request.

■ In his oral instructions the court instructed the jury in general terms that, "A man is presumed to be innocent of a crime until it is proven beyond a reasonable doubt that he is guilty." This generality was not sufficient to cover the principle enunciated in refused Charge 12, requested in writing by the defendant, and the refusal of Charge 12 was error. Supreme Court Rule 45 cannot be properly applied to render this error harmless, particularly in view of the circumstantial nature of the case made against the appellant.

A full discussion relating to the refusal of written requested charges of similar import to Charge 12 supra, where such charge was not fairly covered by other instructions, with citation of numerous authorities, may be found in Gordon v. State, 40 Ala. App. 214, 110 So.2d 329, and the dissenting opinion by Coleman, J., with Livingston, C. J., and Stakely, J., concurring, in the review on certiorari of the opinion and judgment of the Court of Appeals in Gordon. See 268 Ala. 517 at 518, 110 So.2d 334 at 336. We see no reason therefore to belabor this opinion with a repetitious discussion of these authorities, but refer those interested to the Gordon opinions, supra.

■ Counsel for appellant also strenuously argues that this judgment should be reversed because of the refusal of the defendant's request for the affirmative charge, and the denial of his motion for a new trial. The thrust of counsel's argument on this point is that because of the circumstantial nature of the state's evidence, it fails to establish to the degree required the guilt of the defendant below.

After careful consideration of the evidence, it is our conclusion that the state's evidence, and the reasonable inferences therefrom, would be sufficient to support a verdict and judgment of guilt.

However, for the error resulting from the refusal of defendant's requested Charge 12, this judgment must be reversed.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, and MERRILL, JJ., concur.