291 So.2d 343

**Willie Lee DAVIS**

**v.**

**STATE.**

**3 Div. 147.**

Court of Criminal Appeals of Alabama.

Aug. 28, 1973.

Rehearing Denied Sept. 25, 1973.

Jasper B. Roberts, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

On February 17, 1967, a Grand Jury of Montgomery County returned an indictment against James Leroy Embrey and Willie Lee Davis for the robbery of J. W. O'Daniel, a ticket agent at the Union Station in Montgomery. Embrey was tried and convicted and sentenced to life imprisonment. This judgment was affirmed by the Supreme Court on September 26, 1968. Embrey v. State, 283 Ala. 110, 214 So.2d 567.

This is the second appeal for appellant Davis. His first trial resulted in a verdict and judgment of guilty, punishment being fixed at imprisonment in the penitentiary for thirty years. On appeal, the Supreme Court reversed and remanded for a new trial because of the failure of the trial court to give written charge no. 12, set out in the opinion of that case. Davis v. State, 284 Ala. 135, 222 So.2d 719.

For the sake of brevity, attention to these two cases is invited by anyone who may be interested in the factual history leading up to these convictions. There are two factual differences in the instant appeal when compared with the first trial. Appellant testified at his first trial but declined to take the witness stand at the last trial. At the first trial, he denied participation in the robbery and sought to establish an alibi by his testimony and that of his mother. Appellant's co-indictee was not a witness at appellant's first trial but testified as a witness for the prosecution during the last trial giving rise to the instant appeal.

Embrey testified that on February 13, 1967, he was riding in an automobile driven by appellant. It was a 1956 black and white Chevrolet. They picked up two girls and went to the Elks Club where they had some drinks and had a group picture made. The photograph was introduced in evidence as State's Exhibit Number 4. They left the Elks Club and went to the Tijuana Club where they purchased a box of chicken and went to one of the girls' homes and ate; that he and appellant left the girls and rode around for a while; that appellant was driving and stopped the car near the Union Station; that he had a .25 automatic pistol belonging to appellant and he went inside the Union Station and robbed the place at gun point. After the robbery, he returned to the car where appellant had parked it and just before getting in the car on the passenger side, he looked across the street and saw a cab turning around and he fired one pistol shot at the cab. Appellant drove the "get away car" followed by the cab driver; that appellant lost the cab driver in traffic and drove to the home of appellant's mother; that he left some of the money from the robbery with appellant, called a cab and was picked up by the police officers about twenty minutes later. In sum, Embrey's testimony shows that he and appellant embarked upon a joint enterprise to rob; that appellant stayed in the car while Embrey robbed the station agent, and appellant drove the fleeing car from the robbery scene and got his part of the fruits of the crime.

The only error urged for a reversal is the action of one of the judges of the Circuit Court of Montgomery County in denying appellant's retained counsel's motion for a delay in one case announced ready for trial so that he could represent appel-

lant. Judge Emmet sent this case to Judge Carter's courtroom for trial and continued to call the docket. Thereupon, the following occurred:

"MR. L. H. WALDEN: Your Honor, I can't engage in this trial at this time because I am supposed to be in the other court with this man, Davis.

"THE COURT: If that is a request for a continuance, the request is hereby denied. As I understand it, that is a robbery case—

"MR. L. H. WALDEN: I am not requesting a continuance. It is exactly this: I am employed by the defendant over there and I have let Mr. Roberts in on this case with me and he is subordinate to me and he is my employee and I think this man is entitled to be represented by counsel of his own choosing and I am it. I am not asking for a continuance.

"THE COURT: Would you like to send Mr. Roberts over here to try this case?

"MR. L. H. WALDEN: Well, it would be the same situation. He was not even with me when these people employed me to represent him and therefore I am not asking for a continuance but just simply that I be excused from this case at this time to go over there and try the one I am already employed in.

"THE COURT: The court is ready to try the case of the State of Alabama versus Mary Davis. If you would like to represent her, fine; if Mr. Roberts would like to represent her, fine, then Mr. Roberts can represent her and you can go over to the other side and you have the permission of the court.

"MR. L. H. WALDEN: I am requesting that this case be held until I can engage in that trial over there and Mr. Roberts is not qualified. He has not been employed by either one of these defendants and I am requesting that I be allowed to go over to that court over there to try that case.

"THE COURT: It would be the ruling of the court that Mr. Roberts is qualified to practice law as he has been qualified to practice law.

"MR. L. H. WALDEN: Well, he has been qualified to practice law, Judge, but he has not been employed on this case, either on this case or that one. I have been employed.

"THE COURT: Those matters will be duly noted. Now, if the defendant will take a seat at counsel table we will proceed.

"MR. L. H. WALDEN: Your Honor, I want to be excused for about five minutes so that I can go over to the other court and enter an objection to that case proceeding without me.

"THE COURT: Well, perhaps we can get that done but right now we are going to start qualifying this jury.

"MR. L. H. WALDEN: Your Honor, I would like the record to note an exception in this case and also that I am not allowed to go to the other court where I have been employed to represent that defendant, Willie Lee Davis. I am engaging now in this trial on the court's specific orders over my objection.

"THE COURT: The record will so reflect.

"MR. L. H. WALDEN: Would you allow me five minutes to go to the other court before we start in this case, Your Honor?

"THE COURT: I am of opinion that Mr. Roberts can handle the matters over there.

"MR. L. H. WALDEN: I would like five minutes so that I can go over there and state into the record this proceeding so that we may have that for review if it is necessary.

"THE COURT: Well, the court notices that it is 12:30 and we have been calling the docket since 9:00 and your five minute request, in the court's judgment, would not be necessary at this time and request for same is hereby denied.

"MR. L. H. WALDEN: We would like the record to note an exception to that too, Your Honor.

"THE COURT: We will proceed to qualify this jury now.

"(WHEREUPON PROCEEDINGS CONTINUED IN THE CASE OF THE STATE OF ALABAMA VERSUS MARY DAVIS, CASE NO. 5708.)"

Mr. Walden made it plain that he was not asking for a continuance of the case that he was being forced to try, but only that the case be held in abeyance until he could try appellant's case. Failing in that, he asked to be excused for five minutes so that he could go before Judge Carter and explain his unwanted dilemma. This request also was denied. We realize that an impacted docket must be moved with all reasonable dispatch, but a few hours delay would have been proper. It seems to us that this request was a most reasonable one and common courtesy dictates that it should have been granted. This amounted to an abuse of discretion but in the light of the record before us, we do not think it was such a gross abuse of discretion as to entitle appellant to a new trial. Honorable Jasper B. Roberts, an employee-associate of Mr. Walden for four months prior to the date of trial, took over the defense. The record reflects that he did a creditable job in protecting appellant's constitutional rights and insuring him a fair trial. He demonstrated a marked degree of agressiveness and resourcefulness and was thoroughly familiar with all the facts and the testimony of the various witnesses who testified for and against appellant at the first trial. Appellant's guilt was overwhelmingly established and it is to the enduring credit of trial counsel that he received the minimum sentence for robbery.

We have carefully searched the record for other errors affecting the substantial rights of appellant and have found none. The case is due to be affirmed and it is so ordered.

Affirmed.

All the Judges concur.